IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| GIOVANNI CARANDOLA, LTD., a ) <br> North Carolina Corporation ) <br> d/b/a Christie's Cabaret, ) <br> Y.K. ENTERPRISES, INC., ) <br> a North Carolina corporation ) <br> d/b/a Southside Johnnie's, ) <br> REESAW, INC., a North Carolina ) <br> Corporation d/b/a Chester's ) <br> Premier Gentlemen's Club, ) <br> E.K.'S II, INC., a North ) <br> Carolina Corporation d/b/a ) <br> Harper's II, CARL EDWARD ) <br> COLLINS, d/b/a Harper's ) <br> Exotic Car Wash, SIMPLY ) <br> EXPLICIT, L.L.C., a North ) <br> Carolina Corporation, TREASURE ) <br> BOX, INC., a North Carolina ) <br> Corporation, d/b/a Xanadu ) <br> Video and Boutique, ) <br> ) <br>     Plaintiffs, ) <br> ) <br>     v. )   1:05CV1166 <br> ) <br> THE CITY OF GREENSBORO, a ) <br> North Carolina Municipal ) <br> Corporation, ) <br> ) <br>     Defendant. ) | |

<u>MEMORANDUM OPINION and ORDER</u>

OSTEEN, District Judge

Giovanni Carandola, Ltd., Y.K. Enterprises, Inc., Reesaw, Inc., E.K.'s II, Carl Edward Collins, and Treasure Box, Inc. ("Plaintiffs"), operators of adult-oriented businesses around Greensboro, North Carolina, filed an action seeking relief from

ordinances that Defendant City of Greensboro ("Defendant") promulgated and enforced. This court granted Plaintiffs' motion for partial summary judgment, which, in effect, terminated the proceeding, and Plaintiffs are now before this court on motion for attorney fees. For the reasons stated below, the court will deny Plaintiffs' motion.

I.  **STATEMENT OF FACTS AND PROCEDURAL HISTORY**

Plaintiffs' adult-oriented businesses market erotic-dance presentations and sexually explicit publications.[1] When these businesses commenced operations, they were in compliance with Defendant's existing ordinances. Since then, Defendant promulgated and adopted new ordinances that expanded the distance adult-oriented establishments must be from certain properties. See City of Greensboro Development Ordinance section 30-5-2.73.5 (as amended Oct. 16, 2001). After the new ordinance took effect, Defendant challenged Plaintiffs' businesses as nonconforming uses in violation of the new regulations. Plaintiffs then filed a complaint against Defendant to invalidate the new ordinance or contest the manner in which Defendant attempted to apply it.

Plaintiffs' Amended Complaint sought relief through three different means: Counts I and II requested declaratory and injunctive relief based on First and Fourteenth Amendment grounds

---

[1] A complete recitation of the facts and procedural history is contained in the court's September 15, 2006, Memorandum Opinion and Order.

2

under 42 U.S.C. § 1983 ("§ 1983"), and Count III asked the court to declare Defendant's interpretation of the ordinance incorrect as a matter of law. In a previous opinion and order, this court granted Plaintiffs' motion for summary judgment on the third count. After the court's ruling, Plaintiffs submitted a motion for attorney fees under 42 U.S.C. § 1988 ("§ 1988").

**II. ANALYSIS**

Traditionally, courts follow the American Rule when considering motions for attorney's fees. Under this rule, each party bears responsibility for its own fees, unless statutory authority provides attorney's fees to the prevailing party. See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247, 95 S. Ct. 1612, 1616 (1975); Smith v. Robinson, 468 U.S. 992, 1002, 104 S. Ct. 3457, 3463 (1984). According to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, a court in a civil rights action may, in its discretion, allow reasonable attorney's fees to the prevailing party.[2] Plaintiffs claim that their successful motion for summary judgment on Count III entitles them status as a prevailing party for purposes of § 1988, despite the fact that they never litigated their § 1983 claim. The issue before the court, therefore, is whether

---

[2] Though such a decision rests with the discretion of the judge, a prevailing civil rights plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Hensley v. Eckerhart, 461 U.S. 424, 429 (1983) (citations omitted).

3

Plaintiffs are prevailing parties in a civil rights action for the purposes of § 1988.

The term "prevailing party" is rather broad in scope because courts interpret "prevailing" to mean more than total success on the merits. In fact, a party can prevail if he or she succeeds on "any significant issue in the litigation which achieves some of the benefit the [party] sought in bringing the suit." <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983) (citation and internal quotations omitted); <u>see also</u> <u>Farrar v. Hobby</u>, 506 U.S. 103, 113 S. Ct. 566 (1992). This even includes reaching a favorable settlement, so long as an enforceable judgment (i.e. a consent decree) has been entered by the court. <u>See</u> <u>Maher v. Gagne</u>, 448 U.S. 122, 100 S. Ct. 2570 (1980). The Supreme Court, however, has limited the application of "prevailing party" by stating that "respect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail." <u>Farrar</u>, 506 U.S. at 110, 113 S. Ct. at 572 (citation omitted). This means that attorney's fees are appropriate only in light of a "court-ordered change in the legal relationship between the plaintiff and defendant." <u>Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.</u>, 532 U.S. 598, 604, 121 S. Ct. 1835, 1840 (2001) (citation and internal quotations omitted).

4

In this case, Plaintiffs prevailed on their third claim at the summary judgment phase. This claim was not one for a constitutional violation or a denial of civil rights under § 1983, but rather one for a judicial interpretation of an ordinance. The statutory provisions in § 1988 do not extend to prevailing parties in this type of action. In limited situations, however, courts will expand the application of § 1988 when a party pursues a claim in addition to a § 1983 claim and achieves the same success. This raises the issue of whether Plaintiffs' success is sufficiently tied to their § 1983 action to support the expansion of § 1988.

When determining whether or not to award fees under § 1988, courts subscribe to the following rule: "when the claim upon which a plaintiff actually prevails is accompanied by a 'substantial,' though undecided, § 1983 claim arising from the same nucleus of facts, a fee award is appropriate." Smith, 468 U.S. at 1002, 104 S. Ct. at 3463 (citing Maher v. Gagne, 448 U.S. 122, 130-31 (1980)). Courts allow a prevailing party to collect a fee in this situation because "Congress did not intend to have [§ 1988] extinguished by the fact that the case was settled or resolved on a nonconstitutional ground." Id. at 1006, 104 S. Ct. at 3465. In order to award such fees, however, the claim on which a plaintiff prevailed must involve facts and legal theories similar to that of the § 1983 claim. Id. at 1006-07, 104 S. Ct.

5

at 3465.  The types of cases involving a similar pendant and §
1983 claims that are appropriately deemed to share a common
nucleus of facts are generally those in which a plaintiff
presents a number of related issues to the court, and the court
reaches a decision on one claim while abstaining from ruling on
the constitutional one.  <u>Id.</u> at 1006, 104 S. Ct. at 3465.

Here, the fee and non-fee claims do not arise from the same
common nucleus of facts and legal theories.  Under the fee claim,
Plaintiffs sought to invalidate the zoning ordinance as
unconstitutional.  In the non-fee claim, however, they advance
the theory that the ordinance is arguably valid, but does not
apply to them.  In the fee claim, the important fact is that the
Plaintiffs' businesses exist, and the legal theory is that they
operate in a manner protected by the guarantees of the
Constitution.  In the second claim, the important fact is that
the businesses have existed for such a long time that they are
"grandfathered," and the legal theory is that a plain language
interpretation of the ordinance prevents it from applying to
their established businesses.  Though all claims challenged
zoning ordinances on different fronts, the facts and issues were
not so inextricably intertwined as to create a common nucleus of
facts.[3]

---

[3] This is so especially in light of the fact that the
ordinance remains in effect and that one plaintiff, Simply
(continued...)

6

Also important to this analysis is the fact that Plaintiffs' § 1983 claim was not before the court on summary judgment. In cases where courts have allowed a prevailing plaintiff to collect attorney's fees for related claims, the courts abstained from ruling on the constitutional issues because either they could decide the cases on alternate grounds or the case settled.[4] In this case, Plaintiffs chose the ground for the summary judgment motion, and the court was faced with a single claim to decide. The court was not presented with alternative grounds for consideration. Thus, Plaintiffs were not penalized by the

---

[3](...continued)
Explicit, LLC, voluntarily dismissed itself from the case.

[4] See Southwestern Bell Tel. Co. v. City of El Paso, 346 F.3d 541, 550 (5th Cir. 2003) (A "plaintiff may be deemed a prevailing party if he prevails on a supplemental state law claim . . . <u>if the court chooses</u> to avoid ruling on the constitutional issues.")(emphasis added); Seaway Drive-In, Inc. v. Clay, 791 F.2d 447, 449 (6th Cir. 1986) (Parties settled after "District Court stated that appellant was likely to succeed on the merits of its first amendment challenge to the ordinance."); Wisconsin Hospital Assoc. v. Reivitz, 820 F.2d 863, 869 (7th Cir. 1987) (The court found a means of awarding fees to the plaintiff without having to decide a constitutional issue.); Gerling Global Reinsurance Corp. of Am. v. Garamendi, 400 F.3d 803, 806 (9th Cir. 2005) (The § 1983 issue was before the Supreme Court on appeal, but the Court held that the statute at issue was preempted under the foreign affairs doctrine and did not have to address constitutional issues.); Plott v. Griffiths, 938 F.2d 164 (10th Cir. 1991) (The plaintiff challenged the statute on constitutional grounds and the court decided the issue in his favor without addressing constitutional concerns.); Scurlock v. Lynn Haven, 858 F.2d 1521 (11th Cir. 1988) (The plaintiffs challenged the ordinance on constitutional grounds and the court ruled in their favor on alternate grounds, thereby avoiding the constitutional issues.).

granting of summary judgment on a non-constitutional rather than a constitutional issue.  See Smith, 468 U.S. at 1007, 104 S. Ct. at 3466 ("Congress' purpose in authorizing a fee award for an unaddressed constitutional claim was to avoid penalizing a litigant for the fact that courts are properly reluctant to resolve constitutional questions if a nonconstitutional claim is dispositive.").

Plaintiffs claim that a decision denying them attorney's fees would contradict a majority of the circuit courts that have ruled on the matter.  This court, however, finds the Supreme Court's rulings more persuasive than those of other circuits.  The Supreme Court's latest decisions demonstrate a desire to curb the expansion of § 1988.  For example, the Court recently overruled the "catalyst theory" that provided attorney's fees to a party whose suit affected the future action or behavior of a defendant in cases where the plaintiff did not prevail directly on a claim.  See Buckhannon, 532 U.S. 598, 121 S. Ct. 1835.[5]  The Court has also stated a desire to prevent requests for attorney's fees from "result[ing] in a second major litigation."  Hensley, 461 U.S. at 437, 103 S. Ct. at 1941.  Limiting the scope of §

---

[5] In fact, the Supreme Court's decision to eliminate the catalyst theory for the recovery of attorney's fees followed the Fourth Circuit's decision to do the same. See Buckhannon, 532 U.S. at 602, 121 S. Ct. at 1839 (citing S-1 and S-2 v. State Bd. of Educ. of N.C., 21 F.3d 49, 51 (1994)).

8

1988 in a manner complementary to its statutory language will also keep in line with the Supreme Court's desire to preserve its ordinary meaning, <u>Farrar</u>, 506 U.S. at 110, 113 S. Ct. at 572, as well as conform to our common law tradition that each side is to bear the cost of its own attorney's fees, unless a statute expressly provides otherwise.

The fact that the Supreme Court's trend of narrowing the allowance of attorney's fees conflicts with the trend in a number of the circuit courts is not particularly instructive. According to Justice Scalia, the Supreme Court's "disagree[ment] with a clear majority of the Circuits is not at all a rare phenomenon." <u>Buckhannon</u>, 532 U.S. at 621, 121 S. Ct. at 1849 (Scalia, J., concurring). This is especially the case where the "majority has been nurtured and preserved by <u>[the Supreme Court's] own misleading dicta</u>." <u>Id.</u> (referring to the importance of overturning the catalyst theory in a situation where the Court's own dicta formed the rationale behind the incorrect interpretation by the circuit courts). Failure to put a limit on the applicability of § 1988 would result in a situation the Supreme Court wanted to avoid—one where a plaintiff could obtain fees in any case just by adding a § 1983 claim. <u>Smith</u>, 468 U.S. at 1003, 104 S. Ct. at 3464 (The Court stated that "[i]f a litigant could obtain fees simply by an incantation of § 1983,

9

fees would become available in almost every case."). Accordingly, Plaintiffs' motion will be denied.

**III. CONCLUSION**

For the reasons stated above, Plaintiffs' Motion for an Award of Attorney Fees and Costs [32] is hereby DENIED.

This the 1st day of March 2007.

/s/ William L. Osteen
United States District Judge